IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF ) | BK. 11-42415 |
| ) | |
| BIG DRIVE CATTLE, L.L.C., ) | |
| ) | |
| Debtor. ) | |
| _____) | |
| CAROL KNISLEY, ) | |
| ) | |
| Appellant, ) | 4:14CV3064 |
| ) | |
| v. ) | |
| ) | |
| JAMES A. OVERCASH, Chapter 11 ) | MEMORANDUM OPINION |
| Trustee, ) | |
| ) | |
| Appellee. ) | |
| _____) | |

This matter is before the Court on the appeal of Carol Knisley from the judgment of the United States Bankruptcy Court for the District of Nebraska.

I. Jurisdiction

District courts have jurisdiction to hear appeals "from final judgments, orders, and decrees" of the bankruptcy courts. 28 U.S.C. § 158(a)(1). The United States Bankruptcy Court for the District of Nebraska issued an order granting appellee's motion for summary judgment in this case on February 20, 2014. This is an appeal from a final order of the bankruptcy court. This Court has jurisdiction to hear the appeal.

II. Standard of Review

A court hearing an appeal from the judgment of a bankruptcy court "review[s] [a] grant of summary judgment de novo, viewing the facts in the light most favorable to the

nonmoving party." *In re Marlar*, 267 F.3d 749, 755 (8th Cir. 2001).

III. Factual Background

The appellant held an equity membership interest in Big Drive Cattle, L.L.C. ("BDC") which operates a commercial feedlot. Appellant made several separate purchases of cattle that he shipped to BDC for feeding and care until they reached an appropriate weight, at which time BDC sold them to third parties on appellant's behalf. BDC would deposit the proceeds from the sale of appellant's cattle with Farm Credit Services of America, where it would be applied against BDC's $1.5 million line of credit account. BDC would then pay appellant an amount equal to the proceeds of the sale less the cost of feed. Several payments to appellant under this arrangement occurred in the year before BDC filed for relief under Chapter 11 of the Bankruptcy Code on September 9, 2011, during which time BDC was insolvent. Importantly, at no time did appellant transfer or intend to transfer legal title or ownership of these cattle to BDC.

The trustee James Overcash filed to recover the payments made to appellant after September 9, 2010. The bankruptcy court found in favor of the trustee, and this appeal followed. These facts were not disputed in the bankruptcy court, nor are they disputed here.

IV. Discussion

As noted by the bankruptcy court, the Eighth Circuit has given guidance on avoidance of preference payments:

> "Under the Bankruptcy Code's preference avoidance section, 11 U.S.C. § 547, the trustee is permitted to recover, with certain exceptions, transfers of property made by the debtor within 90 days before the date the bankruptcy petition was filed." *Barnhill v. Johnson*, 503 U.S. 393, 394 (1992). "This rule 'is intended to discourage creditors from racing to dismember a debtor sliding into bankruptcy and to promote equality of distribution to creditors in bankruptcy.'" *Lindquist v. Dorholt (In re Dorholt, Inc.)*, 224 F.3d 871, 873 (8th Cir. 2000) (quoting *Jones Truck Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund (In re Jones Truck Lines, Inc.)*, 130 F.3d 323, 326 (8th Cir. 1997)).
>
> "Title 11 U.S.C. § 547(b) requires that in order for a transfer to be subject to avoidance as a preference, (1) there must be a transfer of an interest of the debtor in property, (2) on account of an antecedent debt, (3) to or for the benefit of a creditor, (4) made while the debtor was insolvent, (5) within 90 days prior to the commencement of the bankruptcy case, (6) that left the creditor better off than it would have been if the transfer had not been made and the creditor asserted its claim in a Chapter 7 liquidation." *Buckley v. Jeld-Wen, Inc. (In re Interior Wood Prods. Co.)*, 986 F.2d 228, 230 (8th Cir.1993).

*Wells Fargo Home Mortgage, Inc. v. Lindquist*, 592 F.3d 838, 842 (8th Cir. 2010).

The appellant argues that the first element -- "transfer of an interest of the debtor in property" -- was not

-3-

met because the funds were held in trust by BDC as bailee for the appellant, and were never property of the debtor's. Recognizing that the proceeds were not traceable to the funds transferred to appellant because of BDC's use of the proceeds to pay its debts, appellant argues that Nebraska's "swollen assets" doctrine allows for a constructive trust that traces the funds to the debtor's estate.

**Debtor Property**

The bankruptcy court first determined that because the proceeds from the sale of appellant's cattle were not segregated, they could not be traced, and, therefore, appellant's relationship with BDC was -- if it was not already -- converted to a debtor-creditor relationship. *Overcash v. Knisley, In re Big Drive Cattle L.L.C.*, BK11-42415 A13-4040, Filing No. 28. The bankruptcy court relied on precedent from the Eighth Circuit which stated: "once the funds were commingled and it became impossible to actually trace the principal's own money, the relationship had to be treated as a creditor-debtor relationship under the Bankruptcy Code with respect to those disputed funds." *In re Rine & Rine Auctioneers, Inc.*, 74 F.3d 854, 860 (8th Cir. 1996).

The court in *Rine* did look past the ownership of the property before the sale and considered the treatment of the sale proceeds separately to determine whether they were property of the debtor. *Id*. at 860-62. However, the court did not say that treatment by the debtor "converts" or "transforms" the

relationship. Rather the court used the treatment of the proceeds as evidence of whether the underlying agreement between the debtor and the owner of the property contemplated debtor ownership of the funds following the sale. *Id*. In each of the cases cited, and *Rine* itself, the contracts or agreements allowed the debtor to use the funds before remitting payment to the owner of the sold property, often depositing the funds in a general account. *Id*. (citing *In re Walker Indus. Auctioneers, Inc.*, 38 B.R. 8 (Bankr. D. Or. 1983); *In re Bellanca Aircraft Corp.*, 96 B.R. 913 (Bankr. D. Minn. 1989); *In re Farrell & Howard Auctioneers, Inc.*, 172 B.R. 712 (Bankr. D. Mass. 1994)).

However, *Rine* also involved a novel argument that, although the creditor could not identify the particular proceeds from the auction of his property, the funds in one particular account were not "an interest of the debtor in property" under § 547(b) because they consisted only of auction proceeds, which belonged to auction customers, not the debtor. *Id*. In rejecting this argument, the Eighth Circuit clearly reflected an aversion to giving one creditor preference over identical creditors -- all auction customers whose funds were deposited in the account. The creditor in *Rine* argued for an equitable preference on the sole basis that he was first to file to recover his property from the dwindling pool of funds in the auction proceeds account. *See id*. A loosening of the tracing requirement in such a case is inconsistent with the Bankruptcy Code's attempts to treat identical creditors similarly.

The present case is different. The appellant is not making the same novel claim under § 547(b) to recover funds from an account containing only commingled non-debtor property. Rather, appellant is, appropriately, looking to state law to resolve the underlying property rights. *See In re MJK Clearing, Inc.*, 371 F.3d 397, 401 (8th Cir. 2004) ("State law governs the resolution of property rights within a bankruptcy proceeding."). Appellant argues that a resolution of those property rights in his favor would exclude the proceeds from the debtor's estate under 11 U.S.C. § 541(d). Notably, the funds in this case were not commingled but allegedly *misused* to pay the debtor's debts. Further, because appellant argues he was a bailor attempting to recover *his own property* rather than a creditor, the Bankruptcy Code's goal of treating similarly situated creditors equally is maintained.

Finally, unlike *Rine,* et al., in this case, the debtor's treatment of the sale proceeds does not simply confirm that it was the owner of the funds acting within his rights under its agreement with the sellers. It is unclear whether this was a business transaction like the auction and sale cases in *Rine*: in those cases the agreement to sell on behalf of the property owner was an arms-length transaction in which it was part of the debtor's business to make such sales. It makes sense that the funds passed through the debtor's hands as general operating funds owned by the debtor -- especially where the terms of the agreement allowed for such. Here, it is unclear whether this

type of transaction was part of the regular business of the debtor or a bailment undertaken to accommodate a part owner of the debtor enterprise or whether the agreement between the debtor and the appellant anticipated the debtor's use of the sale proceeds.  If it was the latter, the sale proceeds may also have been held in trust by the debtor as a bailee.  The debtor's misuse of bailment funds does not warrant the same treatment as funds which debtor was authorized to take ownership of and use under the debtor-owner agreement.

The bankruptcy court also explicitly refused the imposition of a constructive trust, citing the following precedent from the bankruptcy courts of the Eighth Circuit: "There are at least two requirements before a constructive trust can be imposed:  the debtor's misconduct allows principles of equity to override legal considerations, and the contest is between the creditor and the debtor, not among creditors." *Kunkel v. Ries (In re Morken)*, 199 B.R. 940, 964 (Bankr. D. Minn. 1996).  The bankruptcy court held that the appellant failed the test because he "is one of a number of creditors seeking payment from a limited amount of assets and the imposition of a constructive trust would be unfairly prejudicial to those other creditors."  *In re Big Drive Cattle L.L.C.*, BK11-42415 A13-4040, Filing No. 28.

*Morken*'s recitation of Eighth Circuit precedent was sufficient for its purposes but was, ultimately, imprecise.  The *Morken* court's categorical conclusion that "constructive trusts

cannot be used to alter the priority scheme explicitly prescribed by Congress" is at odds with the Eighth Circuit precedent which *Morken* itself admits would allow the imposition of a constructive trust under some circumstances.  *In re Morken*, 199 B.R. 940. *Morken* involved a typical bank-creditor that was attempting to jump priority over other bank-creditors on the basis of equity. *Id*.  Like *Morken*, the primary Eighth Circuit precedent involved an unsecured creditor who had loaned the debtor money.  *In re Jeter*, 171 B.R. 1015, 1017 (Bankr. W.D. Mo. 1994) *aff'd*, 178 B.R. 787 (W.D. Mo. 1995) *aff'd*, 73 F.3d 205 (8th Cir. 1996) (relying on the "excellent analysis" of the bankruptcy judge).

The *Jeter* analysis on which *Morken* relied distinguished the successful Eighth Circuit constructive-trust plaintiffs in *Chiu v. Wong*, 16 F.3d 306 (8th Cir. 1994) and *United States v. Whiting Pools, Inc.*, 462 U.S. 198 (1983), as "cases where the party seeking a constructive trust possessed an ownership interest in the property held by the debtor."  *In re Jeter*, 171 B.R. at 1020-21.  The court also noted the policy implicit in the Bankruptcy Code against imposing a constructive trust in favor of the creditor who is "speediest or most able to afford the expense of litigation."  *Id*.  Finally, the court considered the general equities of the case including whether the plaintiff was able to protect himself from the fraud of the debtor.  *Id*.

Here, appellant is a purported bailor whose bailment property was misused by the debtor-bailee -- said misuse leading to the inability of the appellant to recover under the bailment

-8-

agreement alone. In other words, unlike the unsuccessful plaintiffs in *Morken* and *Jeter*, the appellant faces the loss of property in which he *did* have an ownership interest. The appellant is also distinct from the *Morken* and *Jeter* plaintiffs in that he was not a similarly situated creditor who was arguing equity on the basis of his diligence in racing to the courthouse. The debtor's misuse of the alleged bailment funds uniquely prejudiced the appellant's claim to the property, whereas no other creditors were harmed by that act. The appellee raises the specter of unclean hands or waiver by suggesting that appellant's insider status gave him knowledge of the misuse, the power to stop it, or both. Ultimately, neither party has submitted evidence dispositive of this issue or the existence of a bailment in regard to the sales proceeds.

**State Law**

Appellant's claims of error are harmless if Nebraska law would not allow for the imposition of a constructive trust. As outlined below, the Court finds that the claim is colorable.

Under Nebraska law, trust assets that cannot be traced because of some action by the trustee may be excused from strict identification via the "swollen assets" doctrine. "The swollen assets doctrine . . . allows a beneficiary to trace into the estate of an insolvent trustee on the theory that the use of trust funds to pay the personal debts of the trustee relieved him from using his individual property for that purpose and consequently increased the amount of it on hand at insolvency."

*In re Estate of Chaney*, 232 Neb. 121, 138, 439 N.W.2d 764, 775 (1989).

While it is true that the "swollen assets" doctrine appears to have emerged from a string of cases involving the insolvency of banks and also true that the Nebraska Supreme Court in *Chaney* declined to extend the doctrine to the realm of probate disputes, the Nebraska Supreme Court did not dismiss the application of the doctrine outside of bank insolvencies out of hand. *Id*. Rather, the Court relayed the general principles of the doctrine in the generic terms of trust assets, trustees, and creditors of the trustee. *Id*. The Court rejected the application of the "swollen assets" doctrine in that particular case because it was not compatible with the beneficiaries theory of recover under the probate code.[1] *Id*. The appellee has not presented, nor does the Court find, such incompatibility exists in the bankruptcy context.

---

[1] In *Chaney*, the beneficiaries sought to recover specific trust property from a decedent's estate. *Chaney*, 232 Neb. at 132, 439 N.W.2d at 772. The Nebraska Supreme Court found that this did not constitute a "claim" under the Nebraska probate statutes because the statute explicitly excluded "dispute[s] regarding title of a decedent to specific assets." *Id*. at 138, 439 N.W.2d at 775. Because of this distinction, the beneficiaries were not barred by their failure to meet the specific statutory requirements for the bringing of "claims" against the estate. *Id*. For the same reason that the beneficiaries' dispute was not a "claim," -- it sought specific assets alleged to be owned by the decedent -- it also could not invoke the "swollen assets" doctrine which "by its very nature, does not implicate 'specific assets.'" *Id*. at 138, 439 N.W.2d at 775.

**V.  Conclusion**

Under the de novo standard of review, the Court finds a genuine issue of fact regarding the existence of a bailment under Nebraska law that would extended to the proceeds of the sales, and, therefore, whether the proceeds were debtor property.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 13th day of June, 2014.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court